All right, we will pick up with our second case, which is number 19-10913, James Michael Forney v. Warden. And we will start with Ms. Bergman. Good morning, Your Honors. May it please the Court, Assistant Federal Public Defender Janice Bergman on behalf of Petitioner Michael Forney. Mr. Forney submits that his case is controlled by this Court's recent decision in Bryant v. Ford. And as was true in Bryant, the District Court here abused its discretion in dismissing Mr. Forney's pro se petition as untimely. First, like the District Court in Bryant, the District Court here took judicial notice of facts, but failed to satisfy the requirements of Federal Rule of Evidence 201. As the States concedes, its notice of those facts was not expressed, and the District Court did not indicate the source it consulted in finding the facts it relied upon. That precluded Mr. Forney from contesting the facts found and also hinders this Court's review of those facts. Second, like Mr. Bryant, Mr. Forney here disputed the District Court's untimeliness decision and stated that he lacked access to a complete state court record and did not have his legal files when he filed his objections. So under Bryant, that's all that is required for this Court to find the District Court abused its discretion when it sua sponte dismissed Mr. Forney's petition as untimely, and Mr. Forney asked the Court to remand to the District Court to require the State to respond to the petition. Now, Ms. Bergman, I have a question for you. If you look at Mr. Forney's petition, on its face it indicates that his first post-conviction motion challenging his conviction was filed more than a year after his conviction became final. Why is that not problematic, putting aside everything about judicial notice? In other words, you just look at his petition and his petition says, the very first post-conviction motion I filed was, I think it was right around two years, maybe three years after his conviction became final. So why isn't that a problem? Well, that's correct, Your Honor, but it's correct only if you consider timeliness only from the position of 2244 D1A, which is, you have one year from the date of finality to file a petition. But under consideration in this case are two other parts of the statute of limitations provision. There's 2241 D1B, which is a state-created impediment to filing, and liberally construed, Mr. Forney's petitions and his other filings suggest that the state-created impediments to filing by misfiling his post-conviction motions, delaying ruling on various of his post-conviction motions. And for that reason, his state post-conviction motion was delayed and therefore his federal petition rendered untimely. In addition, as the magistrate judge discussed and the district court did obliquely, also is another provision of the statute of newly discovered evidence. It really, the language is more complicated than that, but it involves the discovery of facts that trigger a new statute of limitations that are found within the exercise of due diligence. And again, Mr. Forney discussed in his petition and other filings that there were facts that he did not find with respect to his claims, his claims specifically regarding the only weeks before he filed his first state post-conviction motion. And if that's the case, then the one year is triggered from the date that he newly discovered those facts. And so one of the things that the district court ended up doing here was it really didn't consider these other aspects of the statute of limitations provision when it considered the timeliness of Mr. Forney's motion. Okay. Thank you. I mean, the district court actually, when it discussed equitable tolling, it also, I mean, the district court did discuss equitable tolling, but I think it confused equitable tolling with the final provision, the 2244 D1D provision regarding newly discovered evidence. And it confused it with equitable tolling. And in so doing, it didn't understand that the newly discovered evidence would trigger a new one-year limitations period, as opposed to simply tolling time that was passing. I know this is all very confusing, but if that helps the court at all. That newly discovered evidence trigger is claim specific or petition wide? This court has held that the statute of limitations is determined on a claim by claim basis. And so the newly discovered evidence would relate only to, I think the first claim in the petition regarding when Mr. Forney found the facts that the state judge had altered the record. Let me ask you a different question. Even assuming arguendo that the more than thousand days that elapsed between the Supreme Court denying cert on October 3rd, 2011, and Mr. Forney filing his first post-conviction relief application in state court on October 9, 2014, if I have the date, right. The state post-conviction cases apparently ended the very last of the three post-conviction motions in state court ended on the 19th of September, 2017. Is there any quarrel that that date's wrong? I'm just asking about the last date that the state post-trial collateral court denied the last petition was 19 September, 2017. Is there any challenge to that date? You know, your honor, that was the date that the trial court denied the third motion for post-conviction relief, but the fourth district court of appeal did not affirm that until February of 2018 and the Florida Supreme Court denied review in June of 2018, if my dates are correct. I guess what I'm really asking about, he had the opportunity to be heard in the sense that magistrate judge entered a report and recommendation and attached the online documents to the materials. He had the opportunity to object and claim that something was wrong there when he took the matter before the district court. Isn't that enough to constitute being heard, particularly when there's no real challenge to any of these dates? Yes, your honor. I mean, Mr. Forney did have an opportunity to be heard in that he was allowed to file objections and did file objections and also a Rule 60B motion. But here, I mean, unlike Paez and more like Bryant, I mean, Mr. Forney disputed the district court's untimeliness decision. He also asserted he lacked access, even though he filed his objections in his Rule 60B motion, he stated that he lacked access to the complete state court record. But more importantly here, he made arguments with respect to, again, 2244 D1B, an impediment to state court filing that may well have satisfied the statute of limitations and the district court never considered it. In the Critchley case, which I cite in my reply brief, it's a Fifth Circuit case. What happened there was that Mr. Critchley had filed several state post-conviction motions that for some reason the clerk delayed filing or maybe never filed for months and months and months. And Mr. Critchley alleged that the delay in filing in the state courts was an impediment to the timely filing of his state court, I'm sorry, his federal petition in the one-year limitations was not triggered until the proceedings on those state court motions were completed. And here in Mr. Forney's case, he made lengthy, detailed, I mean, the district court called them conclusory, but lengthy, detailed allegations in his objections to the RNR about this state court impediment and the delays in filing. And he expanded on it in his Rule 60B motion, where he states, describes this timeline of how before the federal petition was even due, he had, I mean, months before the federal petition was due, he asked for records and a docket sheet from the state clerk's office. Months and months passed before the state court even provided those to the district court judge for ruling. And then more months passed before the district court issued any kind of ruling. I mean, part of that too, was a motion to enlarge time, the filing of a state post-conviction motion. So assuming as in Critchley, that all of those were a state impediment to his timely filing of the state post-conviction motion, then, I mean, all of that time was told until under Critchley, the completion of his state post-conviction proceedings, which as your court, as your honor just described, was in at the latest June of 2018. And he filed his federal petition in November of 2018. Let me ask you, Ms. Bergman, let me ask you just one quick question. The district court suggested that the claim of newly discovered evidence was unconvincing and unpersuasive because the claim was that the trial judge doctored the record. So that when the record went up on appeal, on direct appeal, that was a doctored record. If all of that is correct, why would not have not been obvious from the moment the appeal was docketed? It would have been apparent then just by looking at the record that it had been doctored up if indeed that was the case. That's what the trial judge says here, the district judge. Why is that wrong? Well, your honor, I mean, Mr. Forney asserts that he did, you know, that he did not realize that the record had been doctored until he attempted to prepare his state post-conviction motion. And he did not realize it until weeks before he filed his first motion in the state courts. He did represent himself pro se for portions of his trial, but by the time the at his word that he didn't realize until later. But that's not the standard when we look at whether he exercised due diligence. If he could reasonably have discerned the defect that he now claims should flip the entire case, then the fact that he didn't get around to doing it until later doesn't seem to me to help him very much. Am I missing something there? Well, your honor, you know, I would, I would respond by stating that given the procedural posture of this case, where, I mean, we're acting kind of blind here because the state has never responded. We don't have the complete state court records. We're working off of docket sheets that the magistrate judge found, not all of which are actually complete. I provided many more in my appendix to this court of the prior state court proceedings in this case. And the case is, is that again, the state hasn't responded and we don't really know exactly what happened. And it's, it's very frustrating as a, as a litigant in these cases to come in and have to work off of a record such as this. And I would say that, I mean, I know Paez is the, is this court's precedent and I understand it, but it's supposed to be an exception to the rule where the state is, is ordered to respond. Judicial notice is supposed to be infrequently taken. And I think in these cases, you know, to take a case like this, where honestly there's thousands of pages of pleadings in the state courts and hundreds of pages in this court and try to look at the record and discern whether the district court erred in some minor, minor fact is premature. And that the simple remedy is for this court to send the case back to the district court and, and order the state to respond to the, to the petition. All right, Ms. Bergman, thank you very much. You've saved your time for rebuttal. Thank you, Your Honor. Ms. Kiman. Good morning. May it please the court, Rachel Kiman, assistant attorney general on behalf of the warden for the Florida Department of Corrections, which I will refer to as the state. The district court in this case properly complied with the safeguards recommended in Paez versus Secretary of Florida Department of Corrections when it's Sue Esponte determined that the appellant's petition was untimely. The magistrate here, in fact, took greater, followed the recommendations in Paez and gave the appellant here greater safeguards than was allowed to the appellant in Paez because the magistrate took judicial notice of the relevant state court documents for the timeliness determination, made them a part of the record, and had a copy mailed to the appellant. The appellant was able to then file objections to the magistrate's report, and both the magistrate and the district court judge relied on those properly judicially noticed documents in finding the petition was time barred. Looking specifically, when is, under Paez and Bryant, when is a prisoner entitled to a hearing, whatever a hearing might mean, on the subject of judicial notice? Yes, your honor. Well, under Paez, the petitioner is entitled to a hearing when he or she disputes the facts of which the court took judicial notice. And significantly here, the appellant has not disputed what the fact that, I'm sorry, I want to properly quote here, the appellant has not disputed in the briefs before this court that court reporters prepare transcripts and forward them to the clerk who forwards them plus court documents to the and in his rule 60b motion did not dispute that fact. And again, as I just mentioned, the appellant has not disputed that fact in the brief. So according to that fact, that fact doesn't go to any of the dates of filing though. Correct. And that goes to our main point that that fact that was noticed by the district court judge and which has been, is a big issue raised by appellant is actually irrelevant to the timeliness determination or the equitable tolling determination. That fact relates to the preparation of the direct appeal. It has, it was well before the appellant's conviction became final and therefore based on the time itself, it has absolutely no connection to the filing of his first motion for post-conviction relief in 2014. And it also has no connection to whether or not there was an impediment as alleged by appellant with regard to his filing. It's actually, if you're, if you are accusing a state court of doctoring and altering records, what does that tell you about the propriety of taking judicial notice? I mean, I, I take your argument that his claim was that the transcripts themselves and state court records might've been doctored or altered or changed and that that did not affect the dates of filing or the dates of decision. I take that argument. I understand it. But when someone is accusing a state court judge or clerk or system of doctoring records that are filed on the docket, how should that, if at all affect the taking of judicial notice? Well, it, in this case, the taking of judicial notice was specifically with regard to the general process of how records are prepared. No, there was more because the, the, the magistrate judge took judicial notice of when things were filed, right? Right. Correct. But that, that from our, from my point of view is divorced from the argument that the trial judge somehow, and again, these are very vague, unsubstantiated, non-specific allegations that the trial judge altered the that were filed in the trial court, which also you can see from the appendix have date stamps from the prison. So my position is that they're not connected, that again, we have certain documents that played into the timeliness determination. The appellant has not actually disputed any of those dates or the timestamps. He claims that they're fraudulent, but he doesn't actually explain how or why they're fraudulent or why them being fraudulent somehow would alter, would alter the calculation of the timeliness. And furthermore, appellant did make a vague allegations of there being impediment to state filing. But our position is that that is belied by the record, because if you look at the district court judge's final order, which is docket entry 19, if you look at paragraphs three, paragraph five, and paragraph 19, the district court judge refers to multiple filings that the appellant made in the Southern District of Florida, in the trial court itself, and in the Florida Supreme Court. So the fact that he alleges he was somehow impeded or from filing is belied by the fact that he was filing in multiple courts, but unfortunately for the appellant, the documents he was filing were not tolling documents. But those documents were filed between 2011 and 2014. So the state's position is that he hasn't shown a causal connection between the alleged fraud or the alleged alteration of the record and any actual impediment. And for that reason, this case is unlike Critchley, where the appellant specifically showed that there was a practice by the clerk's office in that case, that prevented the timely filing of his state habeas petition. Again, we don't have any evidence that he was opposite, that he was making numerous filings in multiple courts, but again, unfortunately, they simply were not tolling motions. You're saying that none of them were tolling motions because the time for tolling had already passed when he filed the first one? I'm saying initially, no. First of all, the numerous filings between 2011 and 2014 that weren't tolling were because they weren't properly filed motions, state pleading seeking post-conviction relief. If you look at the district court judge's order, for example, he talks in paragraph three about a section 1983 case that was filed in the Southern District of Florida, and an amendment to that, which was an amendment which included a federal habeas petition, and the district court judge cites the relevant case law that those are not tolling motions. Paragraph five discusses a time, and I believe an additional motion in the trial court itself, which do not constitute tolling motions. Finally, paragraph 19, the appellant filed multiple petitions in the Florida Supreme Court, some of which were between 2011 and 2014, not all of them, and many were dismissed for lack of jurisdiction. Again, those were not tolling. That's the basis for our position that he was clearly filing in the state courts. He was not impeded or prevented from filing. He simply did not file pleadings for under the rules that constitute tolling motions. Significantly, to tie this all back to the question and the certificate of appealability, whether the district court erred in dismissing his petition as time barred without reviewing the complete official state court record, the appellant has not identified below in his objections or Rule 60B motion, or even in his briefs before this court, specific documents that the district court needed to consider for either the calculation or the equitable tolling argument that it needed to, but didn't, that were part of the entire state court record. And the district judge specifically noted in denying Mr. Forney's Rule 60B motion that any complaint about not having access to his legal files has been mooted by this court's consideration of his motion for relief from judgment. He essentially had a second time of objecting to the timeliness determination and the lack of equitable tolling determination through that Rule 60B motion. He had his legal files at that point, which he recognized in the petition for certificate of appealability that was filed with this court. And so again, to tie it back to the question, he still has not identified any documents that are part of the complete official record that the court needed to consider and did not. And so the state's position is that the district court took judicial notice of the relevant documents. It mailed a copy to the appellant. He had the opportunity to object. And when the district court then denied the petition as time barred, it was proper and complied with the appropriate Okay. Anything else, Ms. Kimon? If there are no further questions, I would just, in closing, emphasize that the fact that the district court took judicial notice of is irrelevant to the timeliness calculation or the equitable tolling determination. It was not disputed by appellant at any point, and there is no causal connection between the notice of who prepares the record and then when or how and the dates of pleadings filed. So again, the district court provided the appropriate safeguards. The appellant has not identified any other records in the complete official state court record that the district court needed to review. And we would ask that you answer the question presented in the negative and affirm the district court's finding that the petition was time barred. Thank you very much. All right. Thank you very much. Ms. Bergman, you have your full time for rebuttal. Thank you, Your Honor. I want to speak specifically to Judge Jordan's question about the fact that the district court found that was judicially noticed regarding the preparation of the record. And I would point the court's attention to the fact that the district court discussed this fact in its discussion of whether this evidence about Judge Holmes fabricating the record restarted the statute of limitations as newly discovered evidence. And I don't know how you can divorce this finding that Judge Holmes could not have fabricated this evidence without and not view it as being related to the district court's determination that the statute of limitations was not re-triggered by this newly discovered evidence. It's discussed in the same paragraph by the district court. It's part of his consideration. And he basically says there's no way that Judge Holmes could have fabricated this evidence. And so therefore, it couldn't be the type of evidence that would trigger a new limitations period. And he does so without any notice. I'm sorry, Your Honor. No, no, go ahead and finish. I'm sorry. No, I was going to say, I mean, he does so without, you know, relying on facts, you know, that as we discussed, that were not judicially noticed and did not give a source for these facts. You know, as an attorney in the federal court system, I have a vague understanding of how state court records are compiled. But even I couldn't tell Your Honors if what Judge is correct or not. And I don't know how it could be considered knowledge, you know, within the, you know, purview of the general public in the way that's required under the rule. But I'm sorry, I interrupted, Your Honor. No, no, I was the one who interrupted. I apologize for that. If there was an impediment, when did the impediment cease? Your Honor, under Critchley, what Critchley seems to say is that the impediment ceases when the proceedings in the state courts are completed. And as Mr. Forney has alleged that the impediment continued, I mean, it started when the state court delayed its consideration of his two motions, his request for a complete docket of the trial court proceedings, the docket that was prepared for purposes of appeal, and then also his motion to enlarge time to file the state post-conviction motion. And the trial court impeded resolution of those motions for, I think it was 14 months. And as a result, the time for the federal petition to be filed had passed, and it also rendered his state post-conviction motion, his first one, untimely. And because the first was untimely, again, his later motions where he tried to rectify the problems with his first motion by seeking a new post-conviction motion based on newly discovered evidence, it rendered them untimely as well. And so his argument is that the proceedings in the state courts were not completed until, as Judge Marcus pointed out, the third state post-conviction motion was denied and the appeals on those proceedings were completed in 2018. And so he would argue that we submit that the impediment continued until the proceedings in the state courts were completed, and that's what Critchley found as well. It found that the state impediment continued until the appeals of Mr. Critchley's state post-conviction motions had been completed. That was June of 2018, right? Yes, Your Honor. Okay. When did the impediment begin? What date? I mean, I'm not asking for a specific day, but give me a month and a year. When did the impediment begin? He filed his first request for ministerial assistance, which the court clerk ignored in February of 2012. That was 122 days after cert was denied on direct appeal. It was about 10 days after the Supreme Court denied her hearing on his cert petition. And so he filed a request for ministerial assistance in February 2012, and that began proceedings in the state courts that continued what he would say with the impediment continued until, as I said, the proceedings on all of his state post-conviction motions in the state courts were completed. One question that I have. Could you tell me what the claim is that he makes about the trial judge having doctored the record? What does he say the trial judge did? Well, actually, I mean, again, the state calls these allegations vague and conclusory, but he goes into them in quite a bit of detail in his 60B motion. The supporting facts start at page 51, and they involve the judge's instructions regarding the Castle Doctrine. The Castle Doctrine, your ability to protect yourself in your own home in the state was a critical issue at Mr. Forney's trial, and he discusses at length how he determined that the instructions given at his trial were altered by the trial judge. He goes into quite a bit for pages, an explanation of what happened in the trial proceedings. Let me just stop you for one moment. Sure. So the claim is that while the jury instructions were proper to begin with, the judge doctored them up afterwards so that when it went up on appeal, the appellate court had a different instruction than the one the trial judge actually gave. Is that the essence of it? Well, I think they're, yes, your honor. I think what he's saying is that the instructions that were provided to the jury by the trial judge were different from those that were provided to the parties in red, and so that was made part of the official record on appeal that went up to the appellate court. So the written instruction he gave was not the same instruction that the appellate court considered on the Castle Doctrine. I think that's correct, right? I'm just trying to get at the heart of what he claims the trial judge did wrong. If that be the case, wouldn't that have been obvious when the appeal was docketed? You know, as I responded to Judge Jordan, Mr. Forney asserts that he did not notice the differences that he asserts involves differences in the way that the pages looked with respect to the jury instructions until he was preparing his first state post-conviction motion in the state courts. Did the same lawyer who tried the case in the state court handle the appeal, the direct appeal? You know, I'm not sure, your honor. I'm not sure that's in the record, but I was just curious about that. I'm not sure, your honor. I don't know. I apologize. Thank you very much. All right. Thank you both very much. We'll take the case under advisement. We'll go ahead and come back for the rest of our